Eric Sirwonka v. Department of Veterans Affairs, 2018-1398. Mr. Roy. Good morning, Your Honors. Thank you for having me here today. I'm one of the outsiders here, as you can see. You are fully inside. Thank you, sir. This is a, we think, a relatively simple case where a public employee, a board-certified and long-term psychologist, a PsyD, was terminated from his position as a physician by the Veterans Administration. What happened at the hearing in November? I'm sorry, ma'am?  At the hearing in November, Judge, what happened is that, I've got to remember, we've had so many hearings. We had a hearing in the district court in Louisiana. Originally, the judge threw out the entire case against him. Right, and that got overturned. What happened? There was a hearing set for this past November. Did that happen? That's correct. We are now back in the district court in exactly the same position we were in originally because the merits of the appeal were never heard. Right, and that's what you said in your brief, but my question is, so you did go back to court in November, right? Yes, ma'am. So what happened then? We have now submitted appeal briefs. The trial court is the first level of appeal on this matter. So what happened in the trial court? We don't have a decision yet. It's submitted for decision with oral argument February 2nd. Okay, so you had a hearing, but no decision, post-trial briefing or something you're doing? We have, it's actually appeal briefing because we didn't add any record at the trial court. You can supplement the record, but there wasn't any supplementation at that time. So the trial judge sitting as a one-judge appellate level will now make a decision. You've got to love Louisiana and how this works, right? Ma'am? I said you've got to love how things work down there. So the trial judge sits as a one-judge appellate court? That's correct. It does not remove the normal court of appeal. It simply adds one level in any administrative ruling. The first level of appeal goes to the district court in the district where that board sits. And that court, as a one-judge appeal court, sits in review. Okay, so nothing really happened other than you telling the court that you were not going to submit any new evidence. That's correct, and the other side did not either, Your Honor. So all of the briefs as of a week ago were submitted. The judge now has all of those briefs. We will do whatever oral argument or answer any questions he has on February 4th, and the matter will be submitted to him for decision. Once he makes a decision there, either side that believes that they have a right to do so or a case to do so has a legal right in Louisiana to take it up to the court of appeal. But as of now, you have a decision of the board which applied the statute to the facts. And what was wrong with that? Because under the statute, Mr. Sawanka could no longer serve. And that's what the decision we're reviewing, right? That is correct. He did have—he was always a Dublin license. He always has had a legitimate and current New York license. But the statute recognizes that possibility. You're 100% correct, Judge. What we argue and we believe is correct is this. He was a long-term, valuable employee. His record was very good. He lost his license in Louisiana on what, from the very start, everyone knew and had reported was an appealable issue. Within four months, he had that license back. He's had it since then. He has it today. We argue that when—those are the facts. He did lose that license. But when the loss of that license is, as it was here, the very start, a fluid loss where he immediately took an appeal and got it back, then we— So you're saying we should read into the statute and unless clause, unless he has appealed it, and that's not in the statute. What it says, Judge, is that the action has to have taken place. He did lose his license, without a doubt. And 7402 says if you lose your license, you will be separated. It's mandatory, right? That's what the statute says. I don't say that it's mandatory because, Judge, you have to look at the reason for the loss of the license and then whether it had anything to do with the agency. So the charge— That's assuming that your argument that the CSRA somehow overrides the plain language of 7204, right? That's correct. But if you look also under 5 U.S.C. 7512.1, it says the agency may remove only for cause promoting efficiency of service. And to sustain the adverse action, they have to show that the charge conduct occurred. It occurred. It occurred. But the two other next items are there has to be a nexus between the conduct and the efficiency of service. That's under the CSRA, right? That's correct. And then the penalty imposed must fall within tolerable limits of reasonableness. If you have an employee who's doing a good job for you, has gotten promotions, his service has been good, he actually has some skills that others don't have, so you want to keep him. If he gets into a problem that you know from the outset, for example, you know he's out for a period of time because of illness or whatever, but he's going to be able to come back, you don't terminate the guy's services. What they did here was... But the statute says may not be employed. It doesn't say may be penalized. And then the question is what's the penalty? It says may not be employed. He could have been, if Your Honor please, he could have been suspended. That would have been a four-month suspension only. He could have been suspended. He could have been placed in a position that did not require his license. He could have worked, as he did for the first two years for the VA, without a license. He could have worked under a licensed psychologist as a lesser person at a lesser pay. All of those were available. What they did here was chose the most severe penalty for something that had one charge. He lost his license in Louisiana. He did nothing wrong at the VA. His services at the VA were exemplary. There were no other charges made against him. Zero. And they took this measure because of the fact, we say, they wanted to get rid of this guy. If they had a reason to get rid of him other than this, they should have presented it, and they didn't. They simply said, you lost this license. We know it's fluid. We know you can get it back. By the time we had the hearing before the American Patients Board, he had his license back. So he, at that time, was licensed. He could have been reemployed at that point in time. And the only reason for the action against him was the loss of that license. We say that because of that, there's absolutely no reason that this man should not be back working for the VA. But even if we're talking about the CSRA versus a statute that may not be even impacted by the CSRA, the decision-maker ultimately made the assessment and said that mitigation of the penalty was not appropriate. If you look at the reasons that the director gave, number one, the record indicates he didn't even know what the criteria was. He said that in the record, Judge. Number two, if you look at what he says, it has nothing to do with the charges against him. Nothing. It talks about the fact that he may not work well with people at the VA. He may not get along with other employees at the VA. That's never charged, and there's no evidence of it. Where does that come from? This is boilerplate that the man put down here simply so that we would have a sheet of paper with the director's reasons on it. There isn't anything else there. He never showed that there was a reason to terminate or that there was a promotion of efficiency of service that was going to take place as a result of that. In fact, it's not even addressed in there because there isn't any promotion of efficiency of the service. From the very start, these people understood that this was not a final decision. They didn't give Dr. Sawanka appropriate notice in advance. It was not a final decision, the removal of his license? That's right. Because he had the right to appeal? That's exactly right, Your Honor. So you're saying that the statute really says that if you aren't licensed or you lose your license, you should be separated, but if and only if all rights of appeal have been exhausted. It doesn't, but it also doesn't say, Judge, that the separation has to be permanent. The separation here could easily have been a suspension, even without, hey, pending getting his license. But the license was a revocation. The issue with respect to the license was a revocation. It wasn't a suspension. It was a temporary revocation, if Your Honor please. It was one that... That sounds like an oxymoron. How is it a temporary revocation? Judge, as long as... That would be a suspension. No, I would beg to disagree, Your Honor. As long as that loss of license, in whatever form it was, was something that was appealable, and we demonstrated it was, and returnable, as we demonstrated it was and is, then I say that you then base your decision, penalty, on whether there's any chance he's going to take care of that problem. You give the person an opportunity to correct the problem. He did it here. He has and always has had, with VA permission, a private practice also. He's conducted that private practice except for four months. If he gets his license back, if he permanently gets his license back, he could always reapply, right? He could reapply, Your Honor. He could reapply. I'm suggesting to you that there's no reason that he should have to do that when the problem here was, one, not of his own making. It is a matter that was, the principle of it was litigated in a civil matter. The matter was substantially thrown out. The complainant was found to be not candid. Counsel, you're into your rebuttal time. Yes. You can continue or save it. If you have no other questions right now, I'll save for rebuttal. Thank you, Your Honor. Mr. Kushner. Please. May it please the Court. 38 U.S.C. Section 7402F provides that a medical professional may not be employed by the Veterans Health Commission. I know what the statute says, but you've got a fact situation here where he was, what, apparently reinstated, and doesn't that play a role here? That's correct, Your Honor. And my understanding is that in the state of Louisiana, it is customary to reinstate the license of a professional once that professional files for an appeal of the license revocation. So here it's merely a matter of custom that the license was reinstated. In other words, it's not, hasn't been reversed on the merits. It has not, Your Honor, that's correct. And that merits hearing is scheduled before the trial judge in Louisiana, counsel just said February. My understanding from conversations with counsel for the Louisiana State Board of Examiners of Psychologists is that that hearing will take place in March. That's the merits hearing in Louisiana. Well, why shouldn't we read 7402 then as relating to a circumstance in which there has been an inability to show that he may get his license back? In other words, why shouldn't we just say until it's final, final, that it doesn't, then 7402 doesn't kick in? So the statute itself does not provide for such an alternative penalty suspension or any type of penalty that's an alternative to revocation. The statute says that the medical professional may not be employed once his license is revoked. And that provision is also strengthened. But it's not revoked. Well, it was revoked at the time that the agency in this case, the Department of Veterans Affairs, removed him from his position. It was not appealed until about a month and a half later. Shouldn't the board have waited until the merits is heard before it makes its decision? No, Your Honor, because, again, the statute provides that the removal has to be immediate. It does not provide for a grace period. It does not provide for alternative sanctions. It says that the medical professional... Removal for revocation, right, of a license? That's correct. But it's customary in Louisiana to have a temporary revocation or suspension. Right. So... And I think that type of situation demonstrates exactly why Congress made this provision as categorical as it is. In the legislative history that we've cited to the court, Congress made clear that its primary... So what happens if he wins on the merits? Then nothing can happen to reinstate him, to get his job back? Unfortunately, not under the statutory language. He can reapply for his position. He'll have many years of experience, and perhaps he'll get another position, but not under the statutory language. And, Your Honor, if I may just finish my point about the legislative history. Congress made clear that the purpose of the statutory provision is veterans' safety, first and foremost. If you have a situation where a state automatically reinstates a license pending an appeal, which is essentially what Louisiana did here, you can have a situation where an unethical or a dangerous medical professional can continue working with veterans while their appeal of the license revocation is pending. Or you can have a person who's innocent of the charges all along working with those veterans. I mean, you're assuming guilt. Well, it's not so much that I'm assuming guilt in as much as the state board already found that the license should have been revoked for cause and actually revoked that license. So there was a full hearing. There was a two-day hearing. There was testimony and evidence presented to the licensure board, and they concluded that there was significant unethical conduct by Dr. Sirwanka. So you're saying we shouldn't fail to apply a clear statute because the suspension of revocation could be reversed? That is correct, Your Honor. I think Congress's intent in this particular statutory language, as well as the legislative history and the VA's reasonable interpretation of that statute as demonstrated in the VA's handbook, I think all that is clear. The court cannot read into that statutory provision additional limitations that are not there. Let me give you a hypothetical because obviously given what Mr. Sirwanka admitted to in his hearing, there was a clear basis for the board, the state licensure board, to decide to revoke his license rather than suspend it. But what if you had a circumstance in which there were no admissions by the doctor, but he had been accused of certain things, the board revokes his license, and later it turns out that all of those things he was accused of didn't occur and that therefore he had been improperly revoked by the state board. The state board realizes that and gives him his license back. So there's no way to undo what happened in terms of his termination? This hypothetical person. Right. There is no way to undo that under that provision of the statute. I would note, however, that both the statute and the VA handbook did provide Dr. Sirwanka with an opportunity to present his case to the VA before he was removed. Right, and he chose not. That's correct. So the notice of proposed removal gave him an opportunity to present orally and in writing, as well as submit evidence to the VA. And the VA handbook also provides for an opportunity to seek review by the network director, which is a level above that individual who removed Dr. Sirwanka from his position. So in that hypothetical, a medical professional could argue to the VA that the license revocation was incorrect and therefore not for cause. And perhaps either the VA individual who makes that decision or the network director would reach a result that the revocation was not for cause. But in this situation... Does 7402 refer to cause or does it simply refer to not having a license anymore? It refers to cause, Your Honor. It specifically says that the license revocation has to be for cause. Okay. Now, Dr. Sirwanka also has presented an argument of retaliation, essentially saying that the VA removed him not because of the license revocation, but because it was retaliating against him for filing an EEOC complaint. And here that argument is not persuasive because the MSPB administrative judge determined as a factual matter that there was no retaliation. The administrative judge weighed the testimony of all the witnesses and concluded that the official that actually removed Dr. Sirwanka was unaware of the EEOC complaint prior to removal. Dr. Sirwanka has presented no evidence to demonstrate that the MSPB's decision was not supported by substantial evidence and therefore that argument does not meet this court's standard of review. There are no further questions. I would like to ask you... Thank you, Mr. Kushner. Thank you. Mr. Roy has a few minutes for rebuttal if you need it. Thank you, Your Honor. Just a very few points. In reciting the Douglas factors, the director here said... There were four things I picked up here. There was, by Dr. Sirwanka, clear professional misconduct that was never charged. Failure to meet ethical standards with patients that was never charged. Professionally ethical misconduct, never charged. And lack of insight into misconduct. None of those were ever found. Where are you reading from? This is the Douglas factors which we cited in our brief on the... rebuttal brief on the top of page 2. These weren't applied by the board. Sir? These weren't applied by the board and therefore they're not subject to our review, right? Well, but part of what they say here is that the director has to determine that these factors exist in order to determine if the penalty is appropriate, whether the charges are appropriate. And the director here says, well, I looked at all of that. What he found here, he talks about charges. There's only one charge. And then he says, there's professional and ethical misconduct. None of those are charged here. Loss of Louisiana license is the sole charge here. And what happens here... I'll comment on something that one of the judges asked about. Reinstatement of license in Louisiana by the district court sitting as the first level of appeal is by rule to show cause. It's discretionary as to whether the judge will allow it or not. And here, the judge did allow it. He can or cannot. It's up to him. It's an order that will stay in effect pending the entire appeal in Louisiana up through the state supreme court. That's just a little backwards, doesn't it? If you've got a licensing board that revokes a license, you would think it would at least, during appeal, the license would remain at least suspended rather than the other way around. The theory, Judge, is that the licensing board is a politically appointed board. It's not judiciary. It doesn't have any training under the law. It has a lawyer there, but no training under the law. And therefore, the first level of appeal ought to be before a court. And I will suggest to you, Judge, that's a fairly significant difference, I think, between civil law under the French Code and the common law in 49 states. And then lastly, Judge, here is the matter before the Louisiana board that led to loss of license had absolutely no connection with the VA employment or actions. None. There were charges completely separate from it in the separate practice of Dr. Sawonga. Thank you, Your Honors. I appreciate your time. Thank you, Counsel. We'll take the case on revising.